O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 10-2353 ODW (CWx) | Date | July 21, 2010 |
|---|---|---|---|
| Title | *Casden Builders Inc. et al. v. Entre Prises USA, Inc., et al.* | | |

| Present: | The Honorable Otis D. Wright II, United States District Judge | |
|---|---|---|
| Raymond Neal | Not Present | n/a |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings (IN CHAMBERS):** **ORDER GRANTING DEFENDANT MSA'S MOTION TO DISMISS WITH PREJUDICE [13]**

     Plaintiffs Casden Builders Inc. and Casden Glendon LLC ("Plaintiffs") filed this action on March 1, 2010 in the Los Angeles County Superior Court against Defendants Entre Prises USA, Inc. ("Entre Prises") and Mine Safety Appliances Co. ("MSA"). The case was removed to this Court on March 31, 2010 based on diversity jurisdiction. (Docket No.1). Several causes of actions were alleged in the complaint against both defendants. However**,** pursuant to Plaintiffs' request to dismiss certain claims against MSA (Docket No. 21), the following causes of actions were dismissed on May 7, 2010 against MSA: Plaintiffs' first cause of action for Breach of Contract; second cause of action for Breach of the Implied Warranty of Merchantability; third cause of action for Breach of the Implied Warranty of Fitness for a Particular Purpose; and eighth cause of action for Specific Performance. (Docket No. 22). Five causes of action remain against MSA: Strict Product Liability; Negligence; Negligent Interference with Prospective Economic Advantage; Unlawful Business Acts and Practices, Cal. Bus. & Prof. Code §17200; and Unjust Enrichment. The matter is before the Court on MSA's Motion to Dismiss Plaintiffs' Complaint. (Docket No. 13). The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; Local Rule 7-15. For the reasons stated below, the motion is **GRANTED WITH PREJUDICE.**

## I.     BACKGROUND

     Plaintiffs are developers of multifamily residential properties in the United States. (Compl. ¶ 9.) It is alleged that Plaintiffs "developed, constructed, and operated an upscale residential community" located at 1060 Glendon Avenue, Los Angeles, CA, known as the Palazzo Westwood Village ("Palazzo"). (*Id.* ¶ 10.) An amenity offered at the Palazzo is an indoor climbing wall. (*Id.*

Case 2:10-cv-02353-ODW-CW Document 27 Filed 07/21/10 Page 2 of 9 Page ID #:196

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-2353 ODW (CWx) | Date | July 21, 2010 |
|---|---|---|---|
| Title | *Casden Builders Inc. et al. v. Entre Prises USA, Inc., et al.* | | |

¶ 12.) On June 5, 2007, Plaintiffs and Entre Prises entered into an agreement whereby Entre Prises would design and install the indoor climbing wall. (*Id.* ¶ 16.) As part of the agreement, Entre Prises agreed to supply certain auto-belay devices which provide an "overhead, controlled descent" from the climbing wall. (*Id.* ¶¶ 15-17.) An auto-belay offers a "hands-free belay to climbers and [] obviate[s] the need for a second individual to serve as a manual belay." (*Id.* ¶ 18.) MSA manufactures an auto-belay, the Redpoint Descender, which was installed by Entre Prises in the construction of the climbing wall. (*Id.* ¶ 14, 20.)

On October 14 and November 3, 2009, MSA issued two "stop-use" notices indicating to owners of climbing walls that the Redpoint Descenders had been involved in two climber incidents resulting in injuries. (*Id.* ¶ 22-23.) Users of this particular device were advised not to use the auto-belays until further notice from MSA. (*Id.*) Plaintiffs bring this action alleging that the braking mechanism in the Redpoint Descenders is defective in design. (*Id.* ¶ 50.) Due to the "stop-use" advisory, Plaintiffs maintain that the climbing wall has been rendered inoperable and caused "[tenant] move-outs, cancellations, lost leasing revenue, and slower lease-ups." (*Id.* ¶ 25.)

## II.  LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(6), a motion to dismiss can be made and granted when the complaint fails "to state a claim upon which relief can be granted." Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To sufficiently state a claim to relief and survive a 12(b)(6) motion, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id.* Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (internal quotation marks omitted). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal citation and quotation marks omitted).

In deciding whether to grant a motion to dismiss, the court must accept as true all "well-pleaded factual allegations." *Iqbal*, 129 S. Ct. at 1950. A court is not, however, "required to accept

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-2353 ODW (CWx) | Date | July 21, 2010 |
|---|---|---|---|
| Title | *Casden Builders Inc. et al. v. Entre Prises USA, Inc., et al.* | | |

as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see, e.g., Doe I v. Wal-Mart Stores, Inc.*, __F.3d __, 2009 WL 1978730, at *3 (9th Cir. July 10, 2009) ("Plaintiffs' general statement that Wal-Mart exercised control over their day-to-day employment is a conclusion, not a factual allegation stated with any specificity. We need not accept Plaintiffs' unwarranted conclusion in reviewing a motion to dismiss.").

Thus, the Ninth Circuit has summarized the governing standard, in light of *Twombly* and *Iqbal*, as follows: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

Finally, leave need not be granted where the amendment would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay. *Ascon Prop., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.") (citations omitted).

**III. DISCUSSION**

    **A. Tort Claims & Economic Loss Doctrine**

MSA argues that Plaintiffs' tort claims are barred by the economic loss rule because Plaintiffs fail to allege any personal injury or any physical damage to property, other than to the device itself, caused by the auto-belay devices. (Mot. at 8-9.) Plaintiffs contend that damage to their property is in fact alleged in the complaint in the form of an inoperable climbing wall which occupies unused space. (Opp'n at 9.) Thus, the inoperable wall and the loss of use of the space constitute property damage incurred as a result of the defective auto-belay devices. (*Id.* at 10.)

The economic loss doctrine prohibits recovery in tort of damages against manufacturers for purely economic loss claimed to be caused by a defective product. *Seely v. White Motor Co.*, 63 Cal. 2d 9, 18-19 (1965) (holding that a consumer's lost profits in his business due to the inability to use a defective automobile, is not recoverable from the auto manufacturer under a theory of strict liability, but is more appropriately recoverable under contract law.) The doctrine was designed to preserve the distinction between damages incurred through breach of contract and damages incurred via tortious conduct. *Id.* at 18 ("The distinction rests. . . on an understanding of the nature of the

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-2353 ODW (CWx) | Date | July 21, 2010 |
|---|---|---|---|
| Title | *Casden Builders Inc. et al. v. Entre Prises USA, Inc., et al.* | | |

responsibility a manufacturer must undertake in distributing his products.") The law does not hold a consumer to bear the "risks of physical injury when he buys a product on the market," but the consumer can be "fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will." *Id.* Under strict product liability and negligence theories, therefore, the manufacturer is held liable only for physical injuries and not economic losses. *Id.*

Economic loss "generally means pecuniary damage that occurs through loss of value or use of the goods sold or the cost of repair together with consequential lost profits when there has been no claim of personal injury or damage to other property." *S.F. Unified School Dist. v. Grace & Co.*, 37 Cal. App. 4th 1318, 1327, n.5 (Cal. App. 1st Dist. 1995). Other examples of unrecoverable economic loss are: depreciation in the value of property caused by a defective product; loss of use; and damages for "inadequate value, costs of repair and replacement of the defective product or consequent loss of profits" absent physical injury to persons or property. *See Anthony Kelsey-Hayes Co.*, 25 Cal. App. 3d 442, 446 (Cal. App. 2d Dist. 1972) (discussing that depreciation in the value of a truck after the manufacturer issued a notice that certain tires were defective is not properly remedied through tort law, but is a claim properly between the consumer and dealer); *see Id.* (identifying loss of use, "unless incidental to physical property damage," as an economic loss.); *accord Sacramento Reg'l Transit Dist. v. Grumman Flxible*, 158 Cal. App. 3d 289, 294 (Cal. App. 3d Dist. 1984) (citations omitted).

MSA is correct in that "the central issue to this motion to dismiss is whether or not Casden has alleged any physical damage to its other property as a result of the allegedly defective Redpoint Descenders." (Reply at 2.) Plaintiffs' attempt to make the argument that physical property damage was sustained due to the alleged defective auto-belays[1] does not find support from the applicable case law. In an effort to create the requisite physical damage to overcome the economic loss bar, plaintiffs cite to insurance cases discussing when an injury qualifies as "physical" to determine the trigger for certain insurance policies regarding asbestos containing building material. *Armstrong World Industries, Inc. v. Aetna Casualty & Surety Co.*, 45 Cal. App. 4th 1 (Cal App. 1st Dist. 1996); *Eljer Mfg., Inc. v. Liberty Mut. Ins. Co.*, 972 F.2d 805 (7th Cir. 1992); (*See* Opp'n at 9-10.) Based on these insurance cases, Plaintiffs assert that a physical link exists between the auto-belays and the

---

[1] Plaintiffs' complaint does not state any colorable claim of physical damage as a result of the auto-belays, but rather generally asserts that Plaintiffs suffered "compensable injury" due to the defective devices and incorporates by reference statements and allegations made in preceding paragraphs. (Compl. ¶¶ 49-70.) In the "Overview" section of the complaint, Plaintiffs conclude by stating the climbing wall "has been rendered inoperable" as a result of the auto-belays and "Casden has suffered and continues to suffer damages resulting from move-outs, cancellations, lost leasing revenue, and slower lease-ups, among other damages." (Compl. ¶ 25.)

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-2353 ODW (CWx) | Date | July 21, 2010 |
|---|---|---|---|
| Title | *Casden Builders Inc. et al. v. Entre Prises USA, Inc., et al.* | | |

climbing wall because the auto-belay is "incorporated into the climbing wall." (Opp'n at 9.) By virtue of the physical linkage, the alleged defective auto-belay physically injures the climbing wall. (*Id.*); *see Eljer Mfg.*, 972 F.2d at 810 (discussing that physical injury is "a loss that results from physical contact, physical linkage, as when a potentially dangerous product is incorporated into another and, because it is incorporated and not merely contained. . . must be removed, at some cost, in order to prevent the danger from materializing."). As MSA correctly argues, these cases do not speak directly to the economic loss doctrine in relation to distinguishing between contract and tort remedies. (Reply at 6.) As such, a discussion of Plaintiffs' arguments based on these cases is unnecessary at this time.

There are several cases both parties touch upon that lend guidance to the subject matter at hand. In *Zamora v. Shell Oil Co.*, fourteen plaintiffs were denied relief from Shell's alleged negligence based on the economic loss rule, because the plaintiffs had suffered no cognizable damages. 55 Cal. App. 4th 204, 208 (Cal. App. 4th Dist. 1997) (denying fourteen plaintiffs from recovering the cost of replacing defective water pipes which had not yet leaked and therefore did not cause damage to other property.) Plaintiffs in this case have a device that may or may not be defective, according to MSA's "stop-use" notices, but which has not caused any tangible physical damage to date. In *Sacramento Reg'l*, plaintiffs purchased 103 new buses, at least one of which had a broken fuel tank support and at least twenty-six others had similar damage. 158 Cal. App. 3d at 292. Assuming that the remaining buses would suffer similar defects in the future, plaintiffs undertook remedial repairs and filed a complaint against the manufacturer claiming negligence and strict products liability. *Id.* The court held that all the alleged damages were "purely economic damages," and thus failed to state a claim for relief. *Id.* at 294. Like a fuel tank that has not caused physical damage to any other part of the bus and of which the owner claims loss of use of the bus during the time of repair, Plaintiffs make the same error in this case by alleging that the auto-belays caused physical damage to the property it attaches to, when in actuality the climbing wall remains intact.[2]

The above examples provide guidance in the Court's understanding of each party's arguments, but *Anthony v. Kelsey-Hayes Co.* contains facts most similar to the current situation. 25 Cal. App.3d 442 (Cal. App. 2d Dist. 1972). In *Anthony*, the plaintiffs were owners of Chevrolet GMC trucks that came equipped with wheels manufactured by the defendant, Kelsey-Hayes. *Id.* at 445. About four years after purchasing the trucks, GMC sent out notifications to owners of the Chevrolet trucks advising that the tires presented a safety risk under certain conditions and should

---

[2] *Sacramento Reg'l* is also factually distinguishable from this case in that Plaintiffs did not go so far as to take affirmative steps to replace the auto-belays with alternative devices, or hire an actual employee to replace the mechanism, all of which is recoverable by contract.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-2353 ODW (CWx) | Date | July 21, 2010 |
|---|---|---|---|
| Title | *Casden Builders Inc. et al. v. Entre Prises USA, Inc., et al.* | | |

be replaced. *Id.* The plaintiffs filed a complaint claiming damages for loss of use of the truck during inspections and repairs of the tires and damages for the depreciation in the value of the truck caused by GMC's advisory letter. *Id.* at 446. However, like Plaintiffs in the current case, the truck owner had not experienced any actual failure of the tires and thus no physical damage was sustained at the time. The *Anthony* court concluded that the damages claimed were properly classified as economic losses, and as a result, plaintiff was barred by the economic loss doctrine from making claims in tort against the manufacturer. *Id.* at 446-7. This is the same case the Court has before it. MSA issued a similar advisory notice, after which, Plaintiffs filed a complaint claiming various tort theories while failing to plead any physical damage to persons or property.

In essence, Plaintiffs expected fully functioning auto-belays. Once the "stop-use" notice arrived, these expectations were no longer being met, and Plaintiffs were left with an allegedly inoperable climbing wall. This is an issue regarding the loss of a bargain, properly belonging to the law of contract and not tort. Accordingly, MSA's motion to dismiss Plaintiffs' tort claims of strict liability and negligence is GRANTED.

The Court notes that both parties failed to address the remaining tort of negligent interference with prospective economic advantage. This particular tort appears to be an exception to the economic loss doctrine, whereby a party may recover in tort based on damage to economic interests alone. *See J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 808 (1979) (holding that a "contractor owes a duty of care to the tenant of a building undergoing construction work to prosecute that work in a manner which does not cause undue injury to the tenant's business, where such injury is reasonably foreseeable"). To claim interference with *prospective* economic relations, Plaintiffs have the burden to plead and prove that MSA's alleged interference was wrongful by some legal measure "beyond the fact of the interference itself." *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 393 (1995). Liability is imposed "for improper methods of disrupting or diverting the business relationship of another which fall outside the boundaries of fair competition." *Settimo Assoc. v. Environ Systems, Inc.* 14 Cal. App. 4th 842, 845 (Cal. App. 4th Dist. 1993). Thus, a showing of independently wrongful conduct serves as a predicate to bring the interference claim. *See Venhaus v. Shultz*, 155 Cal. App. 4th 1072, 1078-79 n.3 (Cal. App. 1st Dist. 2007) (discussing jury instruction regarding negligent interference with prospective economic relations, which instructs a judge to inform the jury that if the alleged wrongful conduct is tortious, the elements of the tort must be given to the jury).

Plaintiffs allege that MSA engaged in wrongful conduct by "negligently selling a product that

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-2353 ODW (CWx) | Date | July 21, 2010 |
|---|---|---|---|
| Title | *Casden Builders Inc. et al. v. Entre Prises USA, Inc., et al.* | | |

contains a latent design defect." (Compl. ¶ 67).[3] It is further alleged that this conduct regarding the auto-belay devices resulted in an interference and disruption of "Casden's economic relationships with current and prospective residents as a result of the present inoperability of the Palazzo's climbing wall." (*Id.* ¶ 68.). However, by this Order, the Court has dismissed Plaintiffs' strict product liability and negligence claims based on the economic loss rule. Accordingly, Plaintiffs cannot rely on this alleged wrongful conduct as a basis for bringing a negligent interference claim. As Plaintiffs have failed to allege any *other* wrongful conduct by MSA other than strict product liability and negligence, Plaintiffs have failed to establish the predicate wrongdoing to bring this cause of action. Consequently, MSA's motion to dismiss Plaintiffs' tort claim of negligent interference with prospective economic advantage is GRANTED.

### B. California's Unfair Competition Law ("UCL")

Because the economic loss rule bars Plaintiffs' tort claims, MSA asserts that this in turn will also null the claim that MSA engaged in unfair business practices under California law. (Mot. at 9.) Further, MSA contends that the complaint is conclusory and vague regarding this claim. (*Id.* at 10.)

California's unfair competition law prohibits business practices that are unlawful, unfair, or fraudulent. Cal. Bus. & Prof. Code §17200. A business practice is unlawful when the conduct at issue is one "forbidden by law, whether civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made."*People ex rel Renne v. Servantes,* 86 Cal. App. 4th 1081, 1087 (Cal. App. 1st Dist. 2001). To allege unfair business practices under the UCL, a plaintiff "'must state with reasonable particularity the facts supporting the statutory elements of the violation.'" *Silicon Knights, Inc. v. Crystal Dynamics, Inc.,* 983 F. Supp. 1303, 1316 (N.D. Cal. 1997) (quoting *Khoury v. Macy's of Cal., Inc.,* 14 Cal. App. 4th 612, 619 (1993)).

Plaintiffs maintain that the economic loss doctrine is inapplicable to their tort claims, therefore making their claim under the UCL sufficiently stated. (Opp'n. at 12.) However, the Court has stated otherwise regarding Plaintiffs' tort claims. Dismissing Plaintiffs' tort claims against MSA in turn renders a claim under the UCL invalid inasmuch as there is no longer an underlying basis for an unfair competition claim as alleged against MSA. Accordingly, MSA's motion to dismiss Plaintiffs' claim under the UCL is GRANTED.

---

[3] Plaintiffs entitle this sixth cause of action as interference with *prospective* economic advantage, but later allege that both defendants' conduct also disrupted Plaintiffs' economic relationships with *current* residents. The Court will only address the claim regarding prospective economic advantage as pled in the complaint.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-2353 ODW (CWx) | Date | July 21, 2010 |
|---|---|---|---|
| Title | *Casden Builders Inc. et al. v. Entre Prises USA, Inc., et al.* | | |

### C. Unjust Enrichment

MSA contends that California does not recognize unjust enrichment as a separate cause of action, citing *Melchior v. New Line Productions, Inc.,* 106 Cal. App. 4th 779 (Cal. App. 2d Dist. 2003). (*See* Mot. at 11.) Further, MSA urges the Court to not recognize unjust enrichment as a claim for relief. (Reply at 9-10.) Plaintiffs assert that California courts are split on the issue, but urges the Court to accept the claim as valid. (Opp'n at 13.)

There is a split amongst California courts whether the claim is recognized as an independent cause of action. *See Hands on Video Relay Servs. v. Am. Sign Language Servs. Corp.,* 2009 U.S. Dist. LEXIS 124899 (E.D. Cal. Aug.12, 2009) ("Although California courts agree on the principles underlying unjust enrichment, they disagree as to whether unjust enrichment is itself a cause of action, or instead a remedy available under other causes of action.") Some courts have affirmatively stated that "unjust enrichment is not a cause of action." *Jogani v. Superior Court,* 165 Cal. App. 4th 901, 911 (Cal. App. 2d Dist. 2008) (citing *Melchior v. New Line Productions, Inc.,* 106 Cal. App. 4th 779, 793 (Cal. App. 2d Dist. 2003)). Other courts allow an independent claim of unjust enrichment to stand. *See, e.g., Lectodryer v. Seoulbank,* 77 Cal. App. 4th 723, 726 (2000). What is agreed upon by the courts is that "unjust enrichment" is an effect, "the result of a failure to make restitution under circumstances where it is *equitable* to do so." *Melchior*, 106 Cal. App. 4th at 793 (quoting *Lauriedale Assoc., Ltd. v. Wilson,* 7 Cal. App. 4th 1439, 1448 (Cal. App. 1st Dist. 1992) (italics added); *see also Hands on Video Relay Servs.*, 2009 U.S. Dist. LEXIS 124899 at *42 ("When one party receives a benefit from another or at the other's detriment, and it would be unjust for the former party to retain the benefit, unjust enrichment may cause the benefit to be conveyed to the aggrieved party.").

The Court need not reach the issue of whether unjust enrichment is an independent claim. The inquiry turns to whether as a result of the allegations in the complaint, MSA has been unjustly enriched and, if so, whether it is equitable for MSA to make restitution to the Plaintiffs. Even if the Court were to assume that unjust enrichment is an independent cause of action under California law, Plaintiffs must plead "receipt of a benefit and unjust retention of the benefit at the expense of another." *Lectodryer,* 77 Cal. App. 4th at 726 (allowing a claim of unjust enrichment to stand when a bank retained funds paid by a third party to purchase a letter of credit, for the purpose of paying the plaintiff, after the letter of credit expired).

Plaintiffs allege that MSA has been unjustly enriched "by manufacturing and selling the defective Redpoint Descenders to Casden in exchange for payment." (Compl. ¶¶ 82-83.) Based on the previous findings that Plaintiffs' tort claims and accompanying claim under the UCL are

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 10-2353 ODW (CWx) | Date | July 21, 2010 |
|---|---|---|---|
| Title | *Casden Builders Inc. et al. v. Entre Prises USA, Inc., et al.* | | |

dismissed for failure to state a claim against MSA, Plaintiffs have failed to allege any other facts showing unjust retainment by MSA. That MSA profited from the sale of auto-belays without more is not "sufficient to require [MSA] to make restitution" to the Plaintiffs. *See Peterson v. Cellco Partnership,* 164 Cal. App. 4th 1583, 1593 (Cal. App. 4th Dist. 2008). MSA did not withhold any important information from Plaintiffs regarding the auto-belays. Further, it is not alleged that Plaintiffs directly purchased the devices from MSA. (*See* Compl. ¶¶ 18-20.) Rather, the cost of the auto-belays was included in the contract between Plaintiffs and Entre Prises, not MSA. (*Id.*) Assuming all the facts in the complaint to be true, no circumstances are present that would necessitate a remedy in equity from MSA. Accordingly, MSA's motion to dismiss Plaintiffs' claim of unjust enrichment is GRANTED.

### IV.   CONCLUSION

In light of the foregoing, MSA's motion is GRANTED. Therefore, it is ordered that the claims discussed herein be DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

|  | -- | : | 00 |
|---|---|---|---|
|  | Initials of Preparer | RGN | |